IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| WALTER A. ASCHER, | ) | Bankr. No. 15-36173 |
| | ) | |
| Debtor. | ) | Hon. Janet S. Baer |
| _____ | )_____ | |
| | ) | |
| FRANK KOKOSZKA, solely in his | ) | |
| capacity as Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. |
| | ) | |
| BETHANY PENDELL, | ) | |
| | ) | |
| Defendant. | ) | |

**TRUSTEE'S ADVERSARY COMPLAINT TO AVOID AND RECOVER
POST-PETITION TRANSFERS PURSUANT TO BANKRUPTCY CODE SECTION 549**

Now comes the Chapter 7 Trustee herein, Frank J. Kokoszka, by his attorneys, Kokoszka

& Janczur, P.C., and pursuant to 11 U.S.C. §§ 323, 549, 550 and Rule 7001 of the Federal Rules

of Bankruptcy Procedure, for his Complaint against Defendant Bethany Pendell, states as

follows:

**PARTIES AND BACKGROUND**

1.      On October 24, 2015, Debtor Walter A. Ascher ("Debtor") filed a voluntary

petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Petition Date").

2.      On November 17, 2015, following the resignation of the previously-appointed

trustee, Frank J. Kokoszka was duly appointed as the Chapter 7 Trustee (the "Trustee") for the

Debtor's estate, and he continues to serve as the Trustee.

3.      Defendant Bethany Pendell aka Beth Pendell ("Pendell") is an Illinois resident who, upon information and belief, resides at 4008 North Kenmore, Garden Apartment, Chicago, Illinois 60613.

4.      At a Rule 2004 examination, Defendant Pendell testified that although she had once briefly worked for one of the Debtor's company, Ascher Consulting, her relationship with the Debtor was primarily a friendship, albeit one that at times became very intimate and for a brief period she lived with the Debtor.

## JURISDICTION AND VENUE

5.      This Complaint is an adversary proceeding within the meaning of Rule 7001(1) of the Federal Rules of Bankruptcy Procedure in that it is a proceeding to recover money and property.

6.      This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2). Thus, this Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

7.      Venue in this proceeding is proper in this District pursuant to 28 U.S.C. § 1409(a).

## GENERAL FACTUAL ALLEGATIONS

8.      Debtor Walter Ascher is a sophisticated business debtor. Debtor is an accountant and has a juris doctorate, who by his own admission, worked as a "tax problem solver." The Debtor has owned and been involved in numerous business entities and owned various real properties, some of which were disclosed in his Schedules and Statement of Financial Affairs, many which were not disclosed.

9.      At the Meeting of Creditors, conducted on January 19, 2016, the Debtor testified

that that he was the sole owner of Park Blvd. Investment, Ltd ("Park Blvd"), an Illinois

corporation**.**

10.      The Debtor also testified that Park Blvd's only asset was real estate in Seminole,

Florida which was leased to the Walgreens Corporation for a Walgreens Store (the "Seminole

Property").   This mortgage on the Seminole Property was held by Union National Bank of Elgin

("Union Bank").

11.      Per the Illinois Secretary of State's office, the Debtor was at, all relevant times

hereto, also the president and registered agent of the corporation, which was involuntarily

dissolved  on April 14, 2017. See, Corporation File Detail Report for Park Blvd, attached as

Exhibit A.

12.      Through his own investigation, the Trustee discovered that Park Blvd's only asset

the Seminole Property was sold on or about February 17, 2016, less than a month after the

Meeting of Creditors.

13.      Pursuant to subpoenaing the Debtor's bank statements, the Trustee discovered the

Debtor created a bank account in the name of Park Blvd at Union Bank on February 29, 2016

with an initial deposit of $699,532.63 ("Account # 307" or the "Account").  The Debtor funded

Account # 307 with proceeds he received from the sale of the Seminole Property.

14.      After the initial deposit of the proceeds from the sale of the Seminole Property, no

further deposits were made into the Account, but the Debtor made withdrawals of well over

$600,000 out of the Account in a combination of checks written on the account, cashier's checks,

and other debits.

15.     The checks written on the Account after February 29, 2016 were primarily related to the Debtor's personal affairs and, upon information and belief, not related to any business dealings of Park Blvd. The checks written included: a $20,000 check bearing the memo "Gift" to the Defendant; a $14,213.99 check bearing the memo "2011 Mercedes C-300" to Arnie Yusem Leasing; two checks for $100,000 each for the purchase of cashier's checks; a $10,000 check bearing the memo "Enjoy—August, Josh & Jim" to a Susan Taddeo, whom appears to be related to the Debtor's son, David Ascher; two checks to himself for cash totaling $12,500; a check to his son David Asher for $6,000 bearing the memo "For Madison & Lauren"; a $1,431 check to a Dr. Boyer; a $5,000 check to Thomas Sienkowski bearing the memo "Partial Truck Repayment"; and, a $200,000 check to "Avincorp" bearing the memo "Lot Purchases."

16.     The Debtor used Account #307 as his "own personal piggy bank"—completely disregarding the separate corporate existence of Park Blvd.

17.     The Trustee attempted to obtain the Park Blvd. books and records from the Debtor, especially documentation concerning Park Blvd's assets, liabilities, and financial condition. The only books and records produced by the Debtor concerning Park Blvd. were the first page of its 2014 tax return and some scattered bank statements.

18.     The Debtor was the sole owner of Park Blvd. and the Trustee has not discovered any creditors of Park Blvd.

19.     The lack of corporate records and the Debtor's failure to produce any such records indicates that that Park Blvd. was nothing more than an alter ego of the Debtor and not a separate entity.

20.     Adhering to the fiction of Park Blvd's separate corporate existence would promote injustice in that the Debtor's creditors will be deprived of funds that could be used to

satisfy some portion of their claims, after the Debtor himself used Park Blvd's funds for his own personal use and benefit.

21.     Account #307 and the funds within that Account constitute property of the bankruptcy estate.

22.     The Trustee has previously obtained the balance of Account # 307 that remained at Union Bank (see, Trustee's Motion for Turnover and Order granting the same, Docs # 160 and 162 in Bankruptcy Case # 15-36173).

### POST-PETITION TRANSFERS TO DEFENDANT

23.     On March 1, 2016, the Debtor transferred funds in the amount of $20,000 from Account #307 to Defendant Pendell by check payable to "Beth Pendell" with the word "Gift" written on the check's memo line. See Exhibit B, attached hereto and made a part hereof.

24.     On January 5, 2017, pursuant to Bankruptcy Rule 2004, creditors Jerry Portocalis and Faliron Investments, by their attorney David Newby, and the Trustee examined the Defendant (the "2004 Exam").

25.     During the 2004 Exam, Defendant acknowledged that she received the $20,000.00 check from the Debtor.

26.     During the 2004 Exam, Defendant testified that she was not an employee or an investor of Park Blvd Investments and that she had never even heard of the company. Defendant further testified that the $20,000 check to her in March 2016 was, as it purported to be on its face, a gift from the Debtor.

27.     When asked if the Debtor indicated that the check was "from him as a person, or from Park Boulevard Investments," she testified, "From him."

## COUNT I: AVOIDANCE OF POST-PETITION TRANSFER
## PURSUANT TO SECTION 549

28.     Bankruptcy Code Section 549 states in pertinent part that-

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a
transfer of property of the estate—
(1) that occurs after the commencement of the case; and (2) (A) that is authorized only
under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or
by the court….

29.     Bankruptcy Code Section 550 states, in pertinent part that-

Except as otherwise provided in this section, to the extent that a transfer is avoided under
section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover,
for the benefit of the estate, the property transferred, or, if the court so orders, the value
of such property, from—(1) the initial transferee of such transfer or the entity for whose
benefit such transfer was made; or (2) any immediate or mediate transferee of such initial
transferee.

30.     The Defendant's receipt of not less than $20,000.00 from the Debtor as set forth

herein constitutes an avoidable post-petition transfer of property of the Bankruptcy Estate.

31.     Pursuant to Bankruptcy Code Section 549, the Trustee may avoid the transfer of

not less than $20,000.00 to the Defendant.

32.     Pursuant to Bankruptcy Code Section 550, the Trustee is entitled to recover the

value of not less than $20,000.00 from the Defendant for the benefit of the Bankruptcy Estate.

### PRAYER FOR RELIEF

WHEREFORE, Frank J. Kokoszka, as chapter 7 Trustee of the bankruptcy estate of

Walter Ascher, by his attorneys, respectfully requests that this Honorable Court:

      A.      enter an order in favor of the Trustee avoiding the Debtor's post-petition transfers

of not less than $20,000.00 to Bethany Pendell;

      B.      order the Defendant to pay the Trustee's attorneys' fees and costs; and,

      C.      For such other and further relief as may be just.


Respectfully submitted,
CHAPTER 7 TRUSTEE FRANK J. KOKOSZKA


By:    /s/ Frank J. Kokoszka
         One of his attorneys

Frank J. Kokoszka, Esq. (ARDC # 6201436)
Kokoszka & Janczur, P.C.
19 S. LaSalle Street, Suite 1201
Chicago, Illinois 60603
(312) 443-9600 phone
(312) 254-3156 fax
fkokoszka@k-jlaw.com